712 A.2d 126

**NOYES AIR CONDITIONING CONTRACTORS, INC.**

v.

**WILSON TOWERS LIMITED PARTNERSHIP.**

No. 1268, Sept. Term, 1997.

Court of Special Appeals of Maryland.

June 29, 1998.

---

284

Peter A. Greenburg (Richard K. Green, on the brief), Rockville, for appellant.

Stuart H. Grozbean (Belli, Weil & Grozbean, on the brief), Rockville, for appellee.

Before SALMON and BYRNES, JJ.,and JAMES S. GETTY, Judge (retired), Specially Assigned.

JAMES S. GETTY, Judge (retired), Specially Assigned.

At the conclusion of a court trial in the Circuit Court for Montgomery County, the trial judge awarded the appellant a judgment in the full amount claimed under two contracts with the appellee for the replacement of air conditioning units in an apartment complex. Appellant's appeal is based upon the trial judge's refusal to award attorney's fees, prejudgment interest, and costs, which appellant claims were expressly provided for

in the two contracts. By counterclaim, appellee asserted that the contracts were procured by appellant's fraud.

## Background

From the record, we set forth the chronology of events which, for the most part, are not in dispute. In 1994 and 1995 PEPCO sought to reduce excessive power loads by inducing owners of large facilities to replace older, less efficient air conditioning equipment. The users who participated in the program received a rebate from PEPCO equal to the amount by which the total cost of replacement exceeded the cost of rebuilding the units. Noyes Air Conditioning Contractors, Inc., the appellant herein, was one of the contractors who participated in the replacement program. Wilson Towers Limited Partnership, the appellee, owns and operates a large apartment complex in Oxen Hills.

In the spring of 1994, Noyes advised Wilson of the PEPCO "chiller" retirement program. Thereafter, Noyes and Wilson entered into two substantially identical contracts for the replacement of two chillers in the Wilson complex. Typically, the contractor assisted the property owner in preparing the rebate application and submitting it to PEPCO. Noyes figured the rebate on one of the chillers to be $59,250 and the other to be $55,500.

The rebate applications were not accepted by PEPCO, because the chillers called for in the application would not produce sufficient savings to warrant approval. Noyes revised and resubmitted the application, which included the installation of more expensive, efficient chillers. In August 1994, Noyes submitted two contracts to Wilson reflecting the need for the higher quality chillers. The rebate data, however, remained unchanged from the first application.

Each contract contained the following language on the first page:

PLEASE NOTE:

A.  This proposal is contingent on acceptance by PEPCO for the early chiller retirement program and will not be

binding until this approval is obtained. Amounts quoted as rebates are estimates and are subject to approval by PEPCO, with final payment for the project being the ultimate responsibility of Wilson Towers Apartments.

On page two of the quotation, the following figures appear as to each contract:

PRICE GOOD FOR 30–DAYS INSTALLATION COST (REBATE CALCULATIONS)

#2

| | |
|---|---:|
| INSTALLED COST OF NEW CHILLERS | $82,750.00 |
| Less Resale Value of Refrigerant | 50.00 |
| Less Rebuild Cost of Existing Chiller | 5,200.00 |
| PEPCO REBATE | $77,500.00 |

OWNERS COST
Installed cost-less PEPCO rebate = OWNERS COST
$82,750.00 — $77,5400.00 =                        $ 5,250.00

On the second contract, the figures are as follows:

#3

| | |
|---|---:|
| Cost etc. | $82,750.00 |
| Resale-etc. | 50.00 |
| Rebuild etc. | 8,950.00 |
| PEPCO REBATE | $73,750.00 |

| OWNERS COST | | | | OWNERS COST |
|---|---|---|---|---|
| $82,750.00 | — | $73,750.00 | = | $ 9,000.00 |

On or about August 31, 1994, PEPCO approved the application for rebates but reduced the amount allowable on each contract as follows:

| #2 | $ 77,500.00 | to | $51,603.22 |
|---|---|---|---|
| #3 | $ 73,750.00 | to | $44,000.00 |
| $151,250.00 | — | 93,603.22 | = | $55,656.78 |

This information was submitted by PEPCO, by letter on August 31, to Wilson's property manager. The property manager notified Noyes of the rebate approval from PEPCO, but he failed to mention that PEPCO reduced the amount of the rebate it would allow on each chiller.

The contracts to install the chillers were executed in early 1995, and Noyes proceeded with the installation. Wilson

assigned to Noyes the right to receive the rebates. In June 1995, Noyes received checks from PEPCO for the amounts of the rebates. According to Noyes, that was the first knowledge the company had of the amounts approved by PEPCO. Noyes applied the amount of the rebates to the contract amount and billed Wilson for the difference after subtracting the "Owner's Costs" that Wilson paid previously. The litigation ensued when Wilson refused to pay the additional amounts claimed by Noyes.

Appellant argues that the contract expressly provided for the payment of prejudgment interest, attorney's fees, and court costs. The trial court reasoned that each contract provided a total price for installing a chiller and that Wilson was obligated to pay the difference between that price and the rebate received from PEPCO. The court stated:

So, the total amount is $55,656.78, and I am not awarding any attorney's fees or interests or costs.

Whether the court, by using the term "interests," meant to exclude both prejudgment and post-judgment interest is unclear. The court apparently believed that an award of attorney's fees and, presumably, interest and costs, would amount to a sanction which the court did not impose. That assumption is based upon the court's comment that "If I gave you attorney's fees, it would be because I would find that this defendant had no basis to defend this case." The issue of fees and costs being awards as a contractual right does not appear to have been considered by the court.

The contractual provision relied on by Noyes states:

All work will be completed in a workmanlike manner according to standard practices. It is agreed the contractor will retain title to any equipment and/or material furnished until payment is made in full. If payment is not made as agreed, contractor has the right to remove same and be held harmless for any damages resulting from the removal of equipment and/or material. A one and one-half percentage (1½%) finance charge per month will be added to Past Due accounts. Customer agrees to pay all reasonable collection

fees, attorney's fees and court costs if such services are required and judgment is made against customer.

Noyes raises six issues which can be condensed into whether a plaintiff seeking a liquidated sum under a contract is entitled to collection fees, attorney's fees and costs when the contract provides for the payment of such expenses by the party in default. The remaining issues relate to a right to prejudgment interest, and to what extent the court may exercise discretion in awarding or denying collection fees, attorney's fees, and costs incurred in the collection thereof.

## Discussion

What is allowable as a matter of law or what is allowable as a matter of discretion by the court in awarding damages does not always present a bright line distinction. On the one hand,

parties have the right to make their contracts in what form they please, provided they consist with the law of the land, and it is the duty of the courts to construe them, if possible, as to maintain them in their integrity and entirety.

*Mortgage Investors of Washington v. Citizens Bank & Trust Co.*, 29 Md.App. 591, 594, 349 A.2d 647 (1976), *aff'd*, 278 Md. 505, 509, 366 A.2d 47 (1976) (quoting *Maryland Fertilizing and Manufacturing Company v. Newman,* 60 Md. 584, 588 (1883)).

Conversely, and equally important, is the right of the court generally to protect the interests of the parties and others who may be affected by the resolution of the issues raised.

In *Robert C. Herd Company v. Krawill Machinery Corp.,* 256 F.2d 946, 952 (1958) (Fourth Cir. Md.), Chief Judge Sobeloff addressed the interest question as follows:

Maryland recognizes a difference ... between suit on a contract to pay money on a day certain, as in the case of a bill of exchange or promissory note, or a contract for the payment of interest, in which cases the interest is due as a matter of right; and others in which the allowance of interest is ordinarily discretionary, "according to the equity

and justice appearing between the parties on a consideration of all the circumstances of the particular case."

■ The Court, in *Herd, supra,* acknowledged that the gulf between the two categories, where interest is allowed as a matter of right or where it is allowed as a matter of discretion, continues to narrow due to the tendency of the courts to treat interest as part of the just compensation due an injured party. As far back as *Corner v. Mackintosh,* 48 Md. 374, 389 (1878), a suit for trespass to chattels, the Court of Appeals said:

> The plaintiff is entitled to recover all the legal damages which he has sustained; and nothing less than the value of the property, with interest on the amount, would be legal or just compensation.

Thus, where recovery is for elements of damage insusceptible of precise calculation, the award is presumed to be full compensation without an additional allowance of interest, but where valuation can be arrived at reasonably, full compensation is not rendered by granting the value of the property only and, in those cases, interest is allowable.

In *I.W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 344 A.2d 65 (1975), the Court of Appeals upheld the discretionary award of prejudgment interest to a contractor who had completed construction of an addition to a shopping center. Under the terms of the contract between the parties, the contractor submitted monthly bills to the architect detailing the costs for the previous month. Upon approval by the architect, the contractor was reimbursed by the owner. Upon completion of the project, the contractor submitted a bill for final payment, which the owner refused to pay.

The Court of Appeals held that the trial court could consider that under the terms of the contract the sums owed were "sums certain," and that the contractor had, in effect, used its own funds for the enhancement of the owner's property. Alternatively, the trial court could have found that the owner failed to tender the amount it admitted was due under its theory of the case. In either event, prejudgment interest was allowable as a matter of discretion.

Appellee contends that *Berman* is dispositive of the case before us because "it clearly refutes any claim that the plaintiff in such an action is entitled to prejudgment interest as an absolute matter of right." We disagree. A careful reading of *Berman* establishes that the Court never addressed the issue of whether the allowance of prejudgment interest was a matter of right or a matter of discretion. No discussion of that issue was before the Court because in *Berman* nothing in the contract mentioned interest payable in case of default by Berman. We agree that the facts of that case require an exercise of discretion by the trial court in awarding or denying prejudgment interest.

Appellee also cites *Crystal v. West & Callahan, Inc.*, 328 Md. 318, 614 A.2d 560 (1992), for the proposition that awarding prejudgment interest in contract cases is not a matter of right, but is discretionary. Not unlike *Berman, Crystal* involved a claim by a contractor against a homeowner who refused to pay the balance due on a home improvement contract. While we agree entirely with the awarding of prejudgment interest in *Crystal,* that case is also easily distinguishable from the case presently before us. There was no written contract in *Crystal;* the owner described what she wanted done to extend and enclose a deck; the contractor estimated the cost. Suit was filed a year and a half after completion of the project and the owner had paid what she considered a "good faith" payment, $2,000, on an invoice for $23,769 from the contractor. Pellucidly, on these facts, awarding prejudgment interest on the balance owed as determined by the trial judge was an exercise of discretion. No other basis exists to establish damages incurred by the contractor. That, however, is not the issue herein. Our concern is whether a trial court may, as a matter of discretion, alter the terms of a written contract, executed in good faith by knowledgeable parties, establishing as a matter of right the liability for costs, attorney's fees, and interest in case of default by one of the parties. We believe that the court has no such discretion.

■ Were we to accept appellee's argument, citing the general rule that awarding prejudgment interest is ordinarily discretionary, the rights of parties to negotiate freely the terms of a contract would amount to an exercise in futility. We concede that the court retains the discretion to determine the amount to be awarded as reasonable attorney's fees, costs, or interest, but the court may not alter the terms of the contract agreed to by the parties by denying either party the benefit of the agreement.

Md. Rule 2–604 specifically recognizes the award of prejudgment interest:

(a) Any prejudgment interest awarded by a jury or by a court sitting without a jury shall be separately stated in the verdict or decision and included in the judgment.

(b) Post-judgment interest. A money judgment shall bear interest at the rate prescribed by law from the date of entry.

*See Maxima v. 6933 Arlington Development Limited Partnership,* 100 Md.App. 441, 459, 641 A.2d 977 (1994), stating:

The general rule is that determination of interest should be left to the discretion of the fact finder, and certain exceptions exist that are as well established as the general rule. A contractual obligation to pay a liquidated sum at a certain time and where the money has already been used are pertinent exceptions where interest is recoverable as a matter of right. *Berman,* 276 Md. at 16–18, 344 A.2d 65, relying on *Affiliated Distillers Brand [Brands] Corp. v. R.W.L. Wine and Liquor Co.,* 213 Md. 509, 132 A.2d 582 (1957); *City Pass. Rwy. Co. v. Sewell,* 37 Md. 443, 452 (1873); *see also Travel Committee, Inc. v. Pan American World Airways, Inc.,* 91 Md.App. 123, 188, 603 A.2d 1301 (1992).

■ In the case *sub judice,* the payments due Noyes were for a liquidated amount which was the difference between the contract price and the amount of the rebate authorized by PEPCO. These figures became available to Noyes in June 1995, when the rebates were received from PEPCO. Wilson

was billed for the balance due as of June 30, 1995. From that date forward, Wilson had the use of the funds expended by Noyes in completing the contracts. We reject Wilson's claim that its "good faith" remittance of the amount it claimed was due Noyes rendered Noyes's claim incalculable until final judgment. The contract, which the court found to be unambiguous, defined the amount due as liquidated damages. Paying a lesser amount, later rejected by the court, entitled Wilson to a credit, but did not affect the unpaid balance being for a liquidated sum.

■ Comment (a), sec. 354 Restatement (Second) of the Law, Contracts, states:

If the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable as is any other such duty, subject to legal restrictions on the rate of interest.

The contract herein provided for the addition of finance charges of 1½% per month on "past due accounts." In *Isle of Thye Land Co. v. Whisman,* 262 Md. 682, 709, 279 A.2d 484 (1971), the court of Appeals said:

In view of the *express provision* in the contract for the payment of interest at 6% upon unpaid balances "computed from September 14, 1966, ... the administratrix ... will be entitled to judgment for the $100,000.00 together with interest at the rate of 6% per annum from September 14, 1966." (Emphasis in original.)

Thus, the payment of interest in the case before us is a matter of right, not discretion, based upon the express provision of the contract.

■ Both parties, furthermore, agreed on the rate of interest. We perceive no reason why the rate agreed upon should be disturbed, notwithstanding it exceeds the legal rate of 10% specified in sec. 11–107 of the Courts and Judicial Proceedings Article of the Md.Code. In *Mortgage Investors of Washington v. Citizens Bank & Trust Company of Maryland,* 278 Md. 505, 509–10, 366 A.2d 47 (1976) (quoting *Maryland Fertilizing & Mfg. Co. v. Newman,* 60 Md. 584, 588 (1883)), the Court

considered the issue of modification of an excessive fee charged in a mortgage foreclosure. The fee did not violate any rule or statute, but the amount claimed, pursuant to a contingency agreement, was considered grossly disproportionate to the amount of work involved (15% on unpaid balance of $815,714). The Court of Appeals affirmed this Court's conclusion that the reasonableness of the collection fee should not be considered. The Court herein concluded that no rights of other creditors were involved, there was no overreaching, and the parties were sophisticated borrowers in an arm's length transaction.

We conclude that the reasoning applied in *Mortgage Investors, supra,* is equally apposite in the present case. Both Noyes Air Conditioning Contractors and Wilson Towers Limited Partnership are experienced business enterprises fully aware of the terms of their contract. Accordingly, the prejudgment interest should be computed at the contract rate, and the post-judgment rate should be at 10% in accordance with Courts and Judicial Proceedings Article, sec. 11–107.

We hold, therefore, that the trial court erred in denying Noyes's claim for prejudgment interest, attorney's fees, and costs. The trial court, in the absence of some identifiable misconduct such as fraud, overreaching, misrepresentation, or void as to other creditors, none of which is present in this case, may not alter the terms of a valid contract as a matter of discretion. The parties have a right to contract and to have the terms of their contract honored. The trial court retains the discretion to decide the attorney's fees and costs, but is without discretion to deny the claim altogether.

### Cross-claim

■ Wilson's issue on cross-appeal is whether the trial court erred in ruling that the two contracts were clear and unambiguous where, according to Wilson, the contracts stated in bold letters above the signature line that "Owner's Cost" was a specific amount, determined by a contract price minus a rebate paid by PEPCO, the amount of which was set forth in the contract, but where the contract provided elsewhere in

smaller print that the amount of the rebate set forth in the contract was merely an estimate, and that the owner (Wilson) was responsible for payment of any portion of the contract price that was not paid by PEPCO.

The trial court found that Wilson's representative read and understood the entire contract and made some notations thereon; that Wilson knew that PEPCO's rebate was substantially less than Noyes's estimate; that Noyes was not aware of the final rebate figure which was sent to Wilson until he received the rebate checks from PEPCO; and that Noyes had met its burden of proof. We note that the "small print" Wilson complains about follows large bold print stating "PLEASE NOTE," followed by the statement that the rebates are estimates subject to review by PEPCO.

The record supports the court's denial of Wilson's cross-appeal.

**JUDGMENT VACATED AS TO DENIAL OF INTEREST, COSTS, AND ATTORNEY'S FEES. REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT.**